

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

November 30, 1971

Miss Naomi Harney
County Attorney
Potter County Courthouse
Amarillo, Texas 79101

Opinion No. M-1004

Re:    Several questions relating to county control of vehicular traffic at a railroad crossing.

Dear Miss Harney:

In your recent letter to this office, you request our opinion as to the following questions:

1.    Can Potter County legally employ a flagman at the Santa Fe Railway crossing between the hours of 8:00 o'clock P.M. and 12:00 o'clock P.M.?

2.    If Potter County should employ a flagman and if it has assumed a duty which it is not obligated to assume in accordance with the law, would Potter County be subjecting itself to civil liability for damages?

3.    If Potter County should employ a flagman between the hours of 8:00 o'clock P.M. and 12:00 o'clock P.M., and an accident should occur at 4:00 o'clock P.M., would Potter County be subjecting itself to civil liability for not having a flagman covering the crossing for the full 24-hour period?

4.    What would be the liability of the Sheriff's Department of Potter County, Texas, if the Sheriff, at the request of the Commissioners' Court, parked a Sheriff's vehicle at the crossing with the red light on top of the vehicle operating between the hours of 8:00 o'clock P.M. and 12:00 o'clock P.M. on Saturdays and Sundays?  Tickets would also be issued for vehicular traffic failing to stop at the stop sign installed at the crossing.

-4898-

5.  Can Potter County enter into a contract with the railroad Company to install, on the railroad right-of-way, a regular railroad signal light and bells which warn the public of an approaching train? The County would pay 90 per cent and the railroad company would pay 10 per cent of the cost of installation.

Article 6699, Vernon's Civil Statutes, relates to the hiring of "County traffic officers," and provides, in part, as follows:

"The Commissioners Court of each county, acting in conjunction with the Sheriff, may employ not more than five (5) regular deputies, nor more than two (2) additional deputies for special emergency to aid said regular deputies, to be known as county traffic officers to enforce the highway laws of this State regulating the use of the public highways by motor vehicles."

These traffic officers, operating under the direction of the County Sheriff, may be assigned the duty of controlling the traffic at the crossing in question during the specified time, in line with their statutory responsibility to enforce the State's highway laws. Attorney General's Opinion O-1454 (1939.) We find no specific statute authorizing the Commissioners Court of Potter County, a county of less than 150,000 population, to direct or control traffic; therefore, we conclude there is no implied authority in the County to employ a flagman for that purpose. We thus answer your first question in the negative, except insofar as a traffic control officer under the direction of the County Sheriff could be made available to perform the duties indicated. In view of this answer to your first question, we do not answer your question Nos. 2 and 3.

Your question No. 4 envisions action by the Sheriff's Department to alleviate the dangerous conditions at the crossing in question. Such action, performed by County traffic officers referred to in the preceding paragraph to enforce the State's highway laws, would not expand County tort liability beyond its existing status. Tort liability in a specific situation would depend on the particular facts involved and would not be within the power of this Office to decide.

Your question No. 5 relates to the County's authority to contract for the installation of a regular railroad signal light and bells which would warn the public of an approaching train. Article 6701d, Vernon's Civil Statutes, otherwise known as the Uniform Act Regulating Traffic on Highways, provides in Section 31(a) thereof as follows:

> "Local authorities, in their respective jurisdiction, may place and maintain any traffic-control devices upon any highway under their jurisdiction as they may deem necessary to indicate and carry out the provisions of this Act, or local-traffic ordinances, or regulate, warn or guide traffic. All such traffic control devices hereafter erected shall conform to the State Highway Department's manual and specifications."

Originally, as concluded in Attorney General Opinion No. V-429 (1947), the term "local authorities" as contemplated by the statute did not include County Commissioners Courts. However, when the Legislature in 1963 enacted Sections 169 and 170 of Article 6701d, Vernon's Civil Statutes, it conferred upon the County Commissioners Court of any county certain limited authority in the regulation of traffic speed limits and thereby brought the counties within the meaning of "local authorities" as defined in Article 6701d, Section 12.

Section 169(a) provides, in part:

> "The County Commissioners Court of any county with respect to county highways or roads outside the limits of the right-of-way of any officially designated or marked highway, road, or street of the State Highway System and outside the limits of any incorporated city, town or village shall have . . . authority . . . to alter maximum prima facia speed limits upon the basis of an engineering and traffic investigation. . ."

Section 170(b) provides, in part:

> "Whenever the . . . County Commissioners Court . . . determine on the basis of an engineering and traffic

investigation that slow speeds on any part of a highway consistently impedes the normal and reasonable movement of traffic, the said . . . County Commissioners Courts . . . are hereby empowered and may determine and declare a minimum speed limit thereat or thereon, and when appropriate signes are erected . . . , no person shall drive a vehicle below that limit except when necessary for safe operation or in compliance with law. "

Finally, in 1971, Article 6701d was again amended (S. B. No. 183, Chap. 83, 722, 62nd Leg. , R.S. , 1971), and in Section 87 it was in part provided that:

"The State Highway Commission and local authorities with respect to highways under their respective jurisdictions are hereby authorized to designate particularly dangerous highway grade crossings of railroads and to erect stop signs or other standard traffic-control devices thereat. "

The statute further provides for costs for installation and maintenance of the mechanically operated safety devices, etc. to be apportioned and paid "on the same percentage ratio and in the same proportionate amounts by the State and all political subdivisions thereof as is presently established policy and practice of the State of Texas and the Federal Government. "

In view of the foregoing, we have concluded that Potter County, assuming the location is within its legal jurisdiction, does have the authority to contract for the installation of a regular railroad signal light and bells which warn the public of an approaching train pursuant to the above referenced statutes. The Commissioners Courts of any county thus have the power to erect such an appropriate warning sign to warn and alert traffic for its safe operation at those locations within their respective jurisdictions.

In this connection it should be pointed out that any device or signal erected must conform in its design and location to the Texas Manual on Uniform Traffic Control Devices for Streets and Highways issued by the Texas Highway Department under authority of Article 6701d, Section 29.

## SUMMARY

Potter County may not legally employ a flagman at a railroad crossing on a county road, but these services may be performed by a county traffic officer pursuant to Article 6699, Vernon's Civil Statutes. Performance of such an officer in accord with his statutory duty to enforce State highway laws would not expand the County's tort liability beyond its existing status.

Potter County may enter into a contract to install a regular railroad signal light and bells which warn the public of an approaching train pursuant to Sections 87, 169, and 170 of Article 6701d, V.C.S., as amended.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Kerns Taylor,
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

W. E. Allen, Acting Chairman

James Mabry
Charles R. Lind
Houghton Brownlee
William Craig

SAM McDANIEL
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant